# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 05-6048SI

_____

| | | |
|---|---|---|
| In re: James Leslie Everly, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| James Leslie Everly, | * | |
| | * | Appeal from the United States |
| Debtor - Appellant, | * | Bankruptcy Court for the |
| | * | Southern District of Iowa |
| v. | * | |
| | * | |
| 4745 Second Avenue, Ltd., | * | |
| | * | |
| Creditor - Appellee. | * | |

_____

Submitted: June 15, 2006
Filed: August 2, 2006 (Corrected on August 3, 2006)

_____

Before KRESSEL, Chief Judge, MAHONEY and McDONALD Bankruptcy
Judges.

_____

KRESSEL, Chief Judge.

This case has its origins in arson and burglary at a strip club called Big Earl's
Goldmine. The debtor pled guilty to burglary and was ordered to pay $62,400.00 in
restitution to Big Earl's. The principle issue in this appeal is whether the bankruptcy

court[1] abused its discretion when it denied the debtor's motion for sanctions against the owners of the strip club for violating the discharge injunction when it brought a civil action in Iowa state court. We conclude that it did not and affirm.

## BACKGROUND

On March 9, 1999, the debtor started a fire at Big Earl's Goldmine causing significant damage. He pled guilty to the crime of burglary in the second degree on December 28, 1999 in the Polk County District Court. He received a suspended sentence and probation. On August 16, 2000 the court ordered the debtor to pay restitution in the amount of $163,206.96. The debtor objected to the restitution order and on April 10, 2001, in an amended order, the court reduced the restitution amount to $62,400.00. The judgment indicated that "The amount of restitution ordered in this case does not preclude [the] victim from relitigating in a later civil case the amount of damages sustained."

The debtor filed a Chapter 13 petition on June 21, 2002. In his Schedule F, he listed the unpaid debt for restitution in the amount of $60,976.00 owed to Big Earl's Goldmine c/o Melvin Bryson at 64th Street, Urbandale, IA 50322. The official name of the corporation is 4745 Second Avenue Ltd. d/b/a Big Earl's Goldmine. Melvin was an agent who received a management fee from Big Earl's Goldmine, managed the reconstruction of the club after the fire, and is Big Earl's son. Big Earl's wife Vaunetta Washington is the president, treasurer, secretary and was the registered agent for 4745 at all relevant times.

On August 19, 2002, 4745's attorney filed a notice of appearance and a request for notice in the debtor's Chapter 13 case. 4745 appeared through its attorney at two

---

[1] The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District of Iowa.

2

hearings on confirmation of the debtor's Chapter 13 plan. On November 4, 2002, the debtor moved to have his case dismissed and on November 7, 2002 the bankruptcy court dismissed his case. The Chapter 13 case was closed on December 20, 2002.

The debtor filed a Chapter 7 petition on January 14, 2003. In his Schedule F, he again listed the $60,976.00 restitution debt, indicated its proper name as 4745 Second Avenue Ltd., but continued to list its address as c/o Melvin Bryson 64th Street, Urbandale, IA 50322. The debtor did not list 4745's attorney. A notice of the meeting of creditors was mailed to the creditors on January 14, 2003 and an amended notice was sent on July 21, 2003. 4745 claims to have received neither notice. Vaunetta testified that she never received any notice from the bankruptcy court at the 4745 address relating to the debtor's bankruptcies. Similarly, Melvin testified that he did not receive notice of the debtor's Chapter 7 case. Melvin testified that he was managing another club in Las Vegas, NV at the time and did not always receive the mail sent to his Urbandale, IA address. The bankruptcy court found that 4745 had been an active participant in the Chapter 13 case and the court would have expected that 4745's attorney would be added to the list to receive notice of the Chapter 7 case. The debtor received his Chapter 7 discharge on April 16, 2003. The case was closed on May 5, 2003.

In January 2004, 4745 filed a petition in Iowa state court seeking actual damages of $163,000.00, accrued interest, $500,000.00 in exemplary damages, plus costs, for "purposely and intentionally" burning or procuring the burning of Big Earl's Goldmine. Eight months later, on September 21, 2004 the debtor sent a letter to 4745 advising it that the petition it filed in state court violated the discharge injunction. 4745's attorney responded in a letter dated September 22, 2004 that his client believed the debt owed to it was not discharged.

On October 20, 2004, over nine months after 4745 filed the state court petition, the debtor filed a motion to reopen his Chapter 7 case to pursue relief based on a claim

3

that 4745 violated the discharge injunction. The motion to reopen the case was not served on 4745 or its attorney. The bankruptcy court granted the motion to reopen the case on October 25, 2004.

Three months later, on January 24, 2005, the debtor filed a motion for sanctions. When asked at a hearing held on February 15, 2005 why he did not include 4745's attorney on the schedules, the debtor claimed to have used the addresses from the schedules in the Chapter 13 case to file the Chapter 7 case. In an order after that hearing the bankruptcy court ordered the debtor to schedule the motion for an evidentiary hearing and be prepared to explain why he waited so long after the commencement of the state court action to reopen his bankruptcy case. The bankruptcy court held an evidentiary hearing on August 11, 2005.

The bankruptcy court summarized the debtor's argument during the August 11, 2005 hearing by saying "...I gather the debtor seems to think that I can simply find that the address that was used was good enough because it worked the first time...". The court found it was deficient under the totality of the circumstances not to notice a "very active attorney" for a creditor in the debtor's previous Chapter 13 case. The bankruptcy court also left to the Iowa state court to determine whether the debt was discharged.

In an August 11, 2005 order the bankruptcy court denied the motion for sanctions. The debtor appeals from this order.

**STANDARD OF REVIEW**

We review the decision on whether to award sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx, Corp,* 496 U.S. 384, 399-405 (1990); *Shwartz v. Kujawa (In re Kujawa),* 270 F.3d 578, 581-582 (8th Cir. 2001); *Hanson v. Sabala (In re Sabala)*, 334 B.R. 638, 641 (B.A.P. 8th Cir. 2005) (Finding the bankruptcy

4

court did not abuse its discretion when it imposed sanctions against a creditor for violating the discharge injunction.)

## DISCUSSION

Discharge

Pursuant to 11 U.S.C. § 727(b), a discharge in a Chapter 7 case discharges the debtor from all debts that arose before the date of filing of the bankruptcy petition, except those that are excepted from discharge.

> Except as provided in section 523 of this title, a discharge ... discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.  (Emphasis added)

11 U.S.C. § 727(b).

The discharge injunction "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor whether or not discharge of such a debt is waived..."  11 U.S.C. § 524(a)(2).  The purpose of the discharge injunction is to "ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it."  H.R. Rep. No. 95-595 1st Sess. 365-368 (1977): S. Rep. No. 95-989 95th Con. 2d Sess. 80 (1978).  The Supreme Court described the protection afforded by the discharge injunction as one of the "critical features of every bankruptcy proceeding [sic]..."  *Cent. Virginia Cmty. Coll. v. Katz,* — U.S. —, 126 S. Ct. 990, 996, 163 L.Ed.2d 945, 74 U.S.L.W. 4101 (2006).

Exceptions to Discharge

11 U.S.C. § 523 lists those debts which are excepted from discharge. The discharge injunction obviously does not operate as to these debts. There are nineteen exceptions to discharge listed in § 523(a) and all but three are self-effectuating.[2] *Palmer v. Nordin (In re Nordin),* 299 B.R. 915 (B.A.P. 8th Cir. 2003). By self-effectuating, we mean that no action is required before the discharge is entered. The debts are excepted from discharge simply because of the nature of the debts. Obviously, there may be later disputes (this case is an example) over whether the debt fell into one of the appropriate categories. "Thus while it is not entirely obvious, careful analysis reveals that the scope of a discharge is final when entered and subsequent events do not change what debts were or were not discharged by that discharge. However, under § 523, certain debts were excepted from that discharge when entered." *In re Anderson*, 72 B.R. 495, 496 (Bankr. D. Minn. 1987).

The parties seem to recognize that the restitution already awarded by the state court falls within one of the self-effectuating exceptions and was not discharged. Section 523(a)(7) provides an exception for discharge for a debt:

> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty...

11 U.S.C. § 523(a)(7).

The Supreme Court determined that a restitution order entered prior to the filing of the debtor's case as a condition of the debtor's probation was excepted from discharge as a fine or penalty under 11 U.S.C. § 523(a)(7). *Kelly v. Robinson*, 479

---

[2]    At the time this case was filed, there were four, but the change is immaterial to this case. For convenience we will refer to the current version of § 523.

U.S. 36, 50-52 (1986). The Court reasoned that a restitution order is not made primarily for the benefit of the victim of a crime but rather for the benefit of society as a whole. *Id*, at 52.

The state court ordered the debtor in this case to pay restitution to 4745 for burglary as part of his sentence. The unpaid restitution debt of $60,970.00 is the type of debt the Supreme Court in *Kelly* determined was excepted from discharge under § 523(a)(7).

Three exceptions to discharge are not self-effectuating. A creditor who has a debt of a kind listed in § 523(a)(2), (4), or (6) must file a complaint under Fed R. Bankr. P. 4007(c) to determine dischargeability no later than 60 days after the first date set for the meeting of creditors. Fed. R. Bankr. P. 4007(c); *In re Nordin*, 299 B.R. at 915. A failure to timely file such a complaint will result in the discharge of those debts. 4745 has obviously missed this deadline.

However among the self effectuating exceptions to discharge is the one relied on by 4745.[3] Section 523(a)(3) contains an exception to discharge for debts that are neither listed nor scheduled in time to permit -

> if such debt is of a kind specified in paragraph (2),(4), or (6) of this subsection, timely request for a determination of dischargeability of such debt ... unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;...

11 U.S.C. § 523(a)(3)(B).

---

[3] 4745 also argued that the debt owed to it was excepted from discharge under 11 U.S.C. § 523(19)(iii). We assume it meant 11 U.S.C. § 523(a)(19)(B)(iii). This subsection allows for an exception for various forms of securities violation and has no applicability to this case.

This provision protects creditors who missed the deadline for filing § 523(c) complaints because they were not properly scheduled. *Peterson v. Anderson (In re Anderson),* 72 B.R. 783, 786 (Bankr. D. Minn. 1987).

Section 523(a)(3) litigation differs from § 523(a)(6) litigation in two important ways: jurisdiction and timing. First, bankruptcy courts have exclusive jurisdiction to determine whether debts are non-dischargeable under § 523(a)(2), (4), or (6). A state court has jurisdiction, concurrent with the bankruptcy court, to determine the dischargeability of all other debts. Section 523(c)(1) states:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1).

"The court" referred to in the statute is the bankruptcy court. By negative implication the bankruptcy court shares jurisdiction with other courts of competent jurisdiction over all other exceptions to discharge.

Second, there is no bankruptcy created time limitation on filing a complaint under § 523(a)(3). *In re Honeycutt*, 228 B.R. 428, 430 (Bankr. E.D. Ark. 1998). A complaint other than under 11 U.S.C. § 523(c) may be filed at any time. Fed. R. Bankr. P. 4007(b)

"In short, the penalty to the debtor for failing to schedule a [debt under § 523(a)(2)(4) or(6)] or otherwise inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions." *In re Jenkins,* 330 B.R. 625,

631 (Bankr. E.D. Tenn. 2004)(quoting *First Nat'l Ins. Co. of Am. v. Bartomeli (In re Bartomeli)),* 303 B.R. 254, 269 (Bankr. D. Conn. 2004);  Fed. R. Bankr. P. 4007(b).

A § 523(a)(3) determination would go something like this.  The creditor will commence an action on the debt in state court.[4]  Since discharge in bankruptcy is an affirmative defense, see Fed. R. Civ. P. 8(c) and Iowa Code Ann. R. 1.419, a defendant who claims the debt was discharged will plead discharge as a defense.  The state court will then have to decide at least four things.

1.    Is the debt of a kind described in § 523(a)(2), (4), or (6)?
2.    Was the debt listed or scheduled (as that term has been interpreted)  under § 521(1) of the Bankruptcy Code with the name of the plaintiff?
3.    Did the plaintiff have actual knowledge of the case in time to timely file an adversary proceeding in the bankruptcy court under § 523(a)(2), (4), or (6)?
4.    Does the plaintiff's case have merit?

Although the bankruptcy court in this case had jurisdiction to determine the dischargeability of 4745's claim, it explicitly declined to do so.  The debtor could have filed a complaint as required by Fed. R. Bankr. P. 7001(6), but chose not to do so.  Because the debtor failed to properly raise the issue, it was perfectly appropriate for the bankruptcy court to leave that issue for the state court and address only that issue explicitly presented to it: should 4745 be sanctioned for commencing the state court action?

Sanctions

The authority for a court to impose civil sanctions for violation of the discharge injunction arises under 11 U.S.C. § 105(a).

---

[4]    It could be in a United States District Court if it had jurisdiction over the underlying cause of action.

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

"Section 105 provides to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel." *Clark v. LaBarge (In re Clark),* 223 F.3d 859, 864 (8th Cir. 2000).

The bankruptcy court reviewed the facts and found that 4745 had no actual knowledge of the debtor's bankruptcy case when it commenced the action in state court. That finding is not clearly erroneous. It also reviewed the debtor's conduct in failing to make efforts to make sure that 4745's attorney knew about the Chapter 7 bankruptcy case and delaying several times in bringing this dispute to the bankruptcy court's attention.

Congress has provided for jurisdiction in state courts to determine the dischargeability of most debts. In light of this Congressional decision, we think that as long as a creditor has a good faith basis for believing that its debt was excepted from discharge or, as in this case, had no knowledge of any such discharge, the creditor is not subject to sanctions for violating the discharge injunction when it proceeds in state court.

The bankruptcy court carefully reviewed the facts that lead up to the commencement of the action in state court and found no basis for sanctioning 4745. We certainly cannot say that this decision was an abuse of the bankruptcy court's discretion.

## CONCLUSION

The bankruptcy court left it to the state court to decide whether the debtor's debt to 4745 was discharged. The bankruptcy court determined that it would not sanction 4745 for commencing that action. We find no abuse of discretion by the bankruptcy court in reaching that decision and we affirm.

---